**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SENECA ENVIRONMENTAL PRODUCTS, a Division of Seneca Sheet Metal, Inc., Respondent.**

**No. 79–1590.**

United States Court of Appeals, Sixth Circuit.

April 23, 1981.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Richard Connolly, Washington, D. C., Bernard Levine, Director, Region 8, N.L.R.B., Cleveland, Ohio, for petitioner.

Arthur F. Graham, Tiffin, Ohio, for respondent.

Before ENGEL and MERRITT, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

## ORDER

In this application for enforcement of an order issued by the National Labor Relations Board, 243 N.L.R.B. No. 77 (July 23, 1979), the principal issue is whether there is substantial evidence to support the Board's finding that the respondent company, Seneca Environmental Products, committed an unfair labor practice by refusing to execute an agreement negotiated with union representatives.

The Board found that the company violated sections 8(a)(5) and 8(a)(1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5), 158(a)(1), by refusing to sign the agreement until it had been ratified by union members and by unilaterally discontinuing safety meetings with employees. The Board's order would require the company, *inter alia*, to execute and give retroactive effect to the agreement and to reimburse the union for all dues it has failed to withhold. The company does not defend on appeal its unilateral discontinuation of safety meetings. It agrees that a refusal to sign a negotiated agreement is ordinarily an unfair labor practice but argues that the union and it had agreed that employee ratification through presentation of a majority of dues check-off cards was a condition to a binding agreement.

In *Houchens Market of Elizabethtown, Inc. v. N. L. R. B.*, 375 F.2d 208 (6th Cir. 1967), this Court held that a company may not unilaterally demand ratification as a condition to an agreement. One that does so is

> attempting to bargain, not with respect to "wages, hours and other terms and conditions of employment," but with respect to a matter which [is] exclusively within the internal domain of the Union .... It is not an issue which the Company can insist upon without mutual agreement by the Union, any more than the Union can insist that the contract be submitted to the Board of Directors or stockholders ....

*Id.* at 212. In *N. L. R. B. v. C & W Lektra Bat Co.*, 513 F.2d 200 (6th Cir. 1975), the union conceded that it had told the company during negotiations that the contract would be submitted to employees for ratification. Still, the Court granted enforcement of the order by the Board, which had demanded "specific proof" of "an agreement to make ratification a condition precedent to a collective-bargaining agreement." *C & W Lektra Bat Co.*, 209 N.L.R.B. 1038, 1039 (1974).

From May 4, 1977 to June 2, 1977, the union and the company held six negotiating sessions. The company claims—and its witnesses so testified at the administrative hearing—that it from the beginning made clear its position that ratification was a condition to execution of an agreement. The administrative law judge, weighing the testimony of a half-dozen witnesses, found that the subject was not raised until the final June 2 session. He found that the

company's officers may have understood ratification to be a condition and that the union had announced its intention to seek ratification. But the condition "was never put specifically into words," and he refused to imply it. Resolution of the issue turns on the credibility of the witnesses, as to which the ALJ's judgment is of course entitled to great weight. The company relies heavily on the testimony of Charles Bernard, a member of the union negotiating team whom the company called as a witness, but in his testimony he could not remember whether the ratification issue was raised before the final June 2 session.

The company also asserts that it refused to sign the agreement in part because the union had, after the final bargaining session, deleted the name of the international union, the United Brotherhood of Carpenters and Joiners of America, from the agreement. The company wants it as well as the local union to be bound by the contract. In properly rejecting that claim as a ground for not signing the agreement, the ALJ noted that both the head company negotiator and its attorney testified that the agreement would have been signed had ratification taken place.

The decision of the Board is supported by substantial evidence. Accordingly, enforcement of its order is granted.